UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK MAURICE LEIGH,                          Case No. 10-11182

          Plaintiff,                          Nancy G. Edmunds
vs.                                          United States District Judge

COMMISSIONER OF                              Michael Hluchaniuk
SOCIAL SECURITY,                             United States Magistrate Judge

          Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 21)

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On March 24, 2010, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Nancy G.

Edmunds referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance and supplemental security income benefits.  (Dkt. 3).  This

matter is currently before the Court on cross-motions for summary judgment.

(Dkt. 18, 21).

B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on September 8, 2005, alleging that he became unable to work on May 1, 2005. (Dkt. 9, Tr. at 44). The claim was initially disapproved by the Commissioner on January 6, 2006. (Dkt. 9, Tr. at 37-40). Plaintiff requested a hearing and on August 5, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Sally Willett, who considered the case *de novo*. In a decision dated August 19, 2008, the ALJ found that plaintiff was not disabled. (Dkt. 9 Tr. at 8-19). Plaintiff requested a review of this decision on August 27, 2008. (Dkt. 9, Tr. at 7). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Dkt. 9, Tr. at 5), the Appeals Council, on March 5, 2010, denied plaintiff's request for review. (Dkt. 9, Tr. at 2-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 44 years of age at the time of the most recent administrative hearing.  (Dkt. 14, Tr. at 334).  Plaintiff's relevant work history included approximately 10 years as a machinist, press operator, telemarketer, and window cleaner.  (Dkt. 9, Tr. at 68).  In denying plaintiff's claims, defendant Commissioner considered depression and auditory hallucinations as possible bases of disability.  (Dkt. 9, Tr. 77).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since May 1, 2005.  (Dkt. 9, Tr. at 13).  At step two, the ALJ found that plaintiff's impairments of a history of a closed head injury, a depressive disorder, and history of polysubstance abuse were "severe" within the meaning of the second sequential step.  *Id.*  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id.*  At step four, the ALJ found that plaintiff could not perform his previous work as a machine operator, window cleaner, and telemarketer.  (Dkt. 9, Tr. at 17).  At step five, the

ALJ denied plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 9, Tr. at 18).

B.     Plaintiff's Claims of Error

Plaintiff first argues that the ALJ violated Social Security Ruling 00-4p, which directs that "[a]t the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency" between the job descriptions in the Dictionary of Occupational Titles (DOT) and the vocational testimony offered at the hearing. Soc. Sec. Rul. 00-4p.  According to plaintiff, the failure of an ALJ to meet this positive duty to inquire requires that the decision be vacated.

In addition, while the ALJ concluded that plaintiff's conditions prevented him from performing any work activity based on Listing 12.04, finding that his depression and substance use disorder caused marked difficulties in maintaining concentration, persistence and pace, and repeated episodes of decompensation, according to plaintiff the ALJ went on to incorrectly conclude that benefits could not be paid because "he does not have a disabling mental impairment when the effects of drug and alcohol use are factored out."  (Tr at 14, 16).  According to plaintiff, the ALJ identified no evidence in support of the assertion that the limitations that she found were the result of plaintiff's depression would have been less if he had not been using cocaine or alcohol.

Report and Recommendation
Cross-Motions for Summary Judgment
*Leigh v. Comm'r*; Case No. 10-11182

Under the Commissioner's criteria for making a determination of whether plaintiff's substance use was material to his disability, the ALJ was required to make a detailed finding based on clear evidence that his condition would not be disabling if his substance use stopped.  Rather, after detailing the severe limitations caused by plaintiff's mental impairments, the ALJ found, without any support from or citation to the record, "that he does not have a disabling mental impairment when the effects of drug and alcohol use are factored out."  (Tr. at 16).  The ALJ's only summary of the record that appears to relate to this issue was her reference to plaintiff's testimony that he used cocaine only three times a year and alcohol only once or twice a year, and that he used cocaine "when he wanted to give up living and did not care about anything any more.  Cocaine use was to take the pain away but it didn't."  Thus, according to plaintiff, the only evidence in the record that the ALJ cited clearly shows that his substance use was a result of his mental impairments and was not the cause of those limitations.  The ALJ noted the history of hospital admissions, once each in 2005, 2006, and 2007, and twice in 2008, at which times he tested positive for cocaine, which was wholly consistent with plaintiff's testimony about the frequency of use.  According to plaintiff, the ALJ provided no explanation of how this history supported her conclusion that plaintiff's disabling hallucinations and suicidal thoughts and attempts would have been improved if he had not used cocaine or alcohol.  As shown by the ALJ's

decision, the record establishes that plaintiff has had episodic exacerbations of his limitations from depression, most significantly hallucinations and suicidal ideation and attempts, and that he has sometimes dealt with these by turning to substance abuse.  According to plaintiff, no medical or testimonial evidence supports a finding that plaintiff's depression would have been any less severe if he had not used substances.

    C.    <u>The Commissioner's Motion for Summary Judgment</u>

The Commissioner points out that the ALJ considered evidence that plaintiff had been hospitalized on numerous occasions with depressive symptoms and suicidal ideation between August 2005 and March 2008, and that he tested positive for cocaine use during every one of those hospitalizations (Tr. 16, 158, 161, 184, 218).  The ALJ also noted that plaintiff admitted to doctors that he drank a six-pack of beer regularly and maintained a $100/day crack cocaine habit, while not taking his prescribed medications.  (Tr. 16, 218).  The ALJ then noted that plaintiff's symptoms were related to alcohol and drug use rather than a severe, disabling psychiatric disorder, and that these symptoms largely resolved with abstinence and treatment.  (Tr. 16).  The ALJ also found that plaintiff's limitations were mild when he was not using alcohol and cocaine, and compliant in taking medications. (Tr. 16).  According to the Commissioner, throughout the record, there is evidence of periods during which plaintiff did not use alcohol and drugs, and evidence

indicates that during those periods of sobriety, Plaintiff was not disabled. Plaintiff's symptoms abated with proper treatment and the absence of substance abuse. For example, doctors consistently noted that the auditory hallucinations were controlled with medication. (Tr. 100, 138). They also noted the absence of suicidal ideation when he was abstinent and drug-free for even just a few weeks. (Tr. 126, 135, 263). In August and September 2005, Dr. Farooqi noted that plaintiff, who had been drug-free for three months, exhibited full affect, logical and goal-directed thought process, and fair judgment. (Tr. 263). In December 2006, Dr. Bottinelli noted that plaintiff, who had not had a drink or used cocaine in a year had normal affect, speech and orientation, and was cooperative in the examination. (Tr. 316). Dr. Bottinelli also observed a degree of malingering during this examination. (Tr. 316). In March 2008, plaintiff was briefly hospitalized, during which he admitted he not taken his medications in several months, and used cocaine a few days before entering the hospital. (Tr. 184). With medication, his auditory hallucinations subsided. (Tr. 179). His depressive symptoms also abated and his coping skills improved. (Tr. 179). Additionally, during periods of abstinence, plaintiff was able to resume activities normally. He sought assistance with finding employment and wanted to explore the possibility of attending culinary school. (Tr. 100, 126). Dr. Farooqi also noted that plaintiff, drug-free for several months, was looking for a new job. (Tr. 263).

The ALJ noted plaintiff's reported activities, which included preparing meals, doing laundry, washing dishes, shopping, and watching movies at the library.  (Tr. 16).  Based on the medical evidence of record, the Commissioner asserts that the ALJ reasonably determined that plaintiff's alcohol and cocaine dependence was a contributing factor material to the determination of disability, and that independent of plaintiff's alcohol and substance addiction, his head injury and depressive disorder were not disabling.

The Commissioner acknowledged that, under SSR 00-4p, "when a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any potential conflict between that VE or VS evidence and information provided in the DOT."  SSR 00-4p.  Here, although the ALJ did not expressly inquire at the hearing about the presence of potential conflicts with the DOT, the Commissioner contends that such error was harmless, pointing out that SSR 00-4p also provides that, "where there is an *apparent* conflict between [the vocational] evidence and the DOT," the ALJ will elicit a reasonable explanation for the conflict.  SSR 00-4p (emphasis added). Here, according to the Commissioner, there was no apparent conflict between the VE's testimony and the DOT, so therefore, there was no duty on the part of the ALJ to resolve any such conflict.  *See Poppa v. Astrue*, 569 F.3d 1167, 1174 (10th Cir. 2009) ("Because there were no conflicts between the VE's

testimony and the DOT's job descriptions, the ALJ's error in not inquiring about

potential conflicts was harmless.").  The Commissioner also points out that

plaintiff's attorney cross-examined the VE at the hearing about the jobs identified

in response to the hypothetical question, and did not bring forth any evidence at

that time, or even now, to show how the VE's testimony conflicted with the

information contained in the DOT.  (Tr. 354-56); *see also Ledford v. Astrue*, 311

Fed.Appx. 746, 757 (6th Cir. 2008) ("[N]othing in applicable Social Security

regulations requires the administrative law judge to conduct his or her

own investigation into the testimony of a vocational expert to determine its

accuracy, especially when the claimant fails to bring any conflict to the attention of

the administrative law judge.").  Thus, the Commissioner asserts that there was no

apparent conflict in the record and any error was harmless.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

    This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the

record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.

McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.

Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.

Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

Report and Recommendation
Cross-Motions for Summary Judgment
*Leigh v. Comm'r*; Case No. 10-11182

claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

Report and Recommendation
Cross-Motions for Summary Judgment
*Leigh v. Comm'r*; Case No. 10-11182

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381

*et seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe

impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). A decision denying benefits "must contain specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'" *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits."  *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007).

### 2.    Substance Abuse

Under the Act, a person cannot be considered disabled for disability benefits purposes if drug addiction or alcoholism is a contributing factor material to a disability finding.  *Trent v. Astrue*, 2011 WL 841538 (N.D. Ohio 2011).  The

Regulations provide for the following procedure to determine if drug addiction or

alcoholism is material to the determination of disability:

> How we will determine whether your drug addiction or alcoholism is
> a contributing factor material to the determination of disability.
>
> > a) General. If we find that you are disabled and have
> > medical evidence of your drug addiction or alcoholism,
> > we must determine whether your drug addiction or
> > alcoholism is a contributing factor material to the
> > determination of disability.
> >
> > (b) Process we will follow when we have medical
> > evidence of your drug addiction or alcoholism.
> >
> > (1) The key factor we will examine in determining
> > whether drug addiction or alcoholism is a contributing
> > factor material to the determination of disability is
> > whether we would still find you disabled if you stopped
> > using drugs or alcohol.
> >
> > (2) In making this determination, we will evaluate which
> > of your current physical and mental limitations, upon
> > which we based our current disability determination,
> > would remain if you stopped using drugs or alcohol and
> > then determine whether any or all of your remaining
> > limitations would be disabling.
> >
> > > (I) If we determine that your remaining
> > > limitations would not be disabling, we will
> > > find that your drug addiction or alcoholism
> > > is a contributing factor material to the
> > > determination of disability.
> > >
> > > (ii) If we determine that your remaining
> > > limitations are disabling, you are disabled
> > > independent of your drug addiction or
> > > alcoholism and we will find that your drug

> addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535 and 416.935. In other words, if the ALJ completes the five-step process outlined above and determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct a second five-step analysis in order to determine if the claimant would still be disabled without the substance abuse. *Trent*, at *3, citing, *Underwood v. Comm'r of Social Sec.*, 2010 WL 424970 at *6, *10 (N.D. Ohio 2010). The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability. *Trent*, at *3, citing, *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). The ALJ, however, retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Underwood v. Comm' of Soc. Sec.*, 2010 WL 424970 (N.D. Ohio 2010), citing, *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow." *Underwood*, at *6, citing, *Fastner v. Barnhart*, 324 F.3d 981, 86 (8th Cir. 2003); *see also Brueggeman v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) ("In colloquial terms, on the issue of the materiality of alcoholism, a tie goes to [the claimant].").

2.     Analysis

An "ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed.Appx. 456, 465 (6th Cir. 2006), citing, *McCain v. Dir.*, *Office of Workers Comp. Programs*, 58 Fed.Appx. 184, 193 (6th Cir. 2003) (citation omitted); *see also Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor."). When evaluating treating physician evidence, the ALJ must also consider, under some circumstances, contacting the treating source for clarification:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5p, 1996 WL 374183, *6; *see also* 20 C.F.R. § 404.1527(c), 20 C.F.R. § 404.1512(e); *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000) (The ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits.); *D'Angelo v. Soc. Sec. Comm'r*, 475 F.Supp.2d 716 (W.D. Mich. 2007) (Where an ALJ discounts the opinions of a treating physician because the record

includes virtually no medical records of plaintiff's treatment with that physician, the ALJ should perform a further investigation pursuant to SSR 96-5p.).

Plaintiff received fairly regular care and treatment for his mental health conditions and his substance abuse over the course of several years, as evidenced in the record.  However, several of those who treated him did so in emergency/hospitalization circumstances and were not "treating physicians," providing ongoing care over a period of time as contemplated by the regulations. Much of the evidence of "improvement" while plaintiff was medicated and unable to access cocaine or alcohol relied on by the ALJ came at the end of these hospitalizations.  Of course, in such circumstances, no assessment of plaintiff's ability to perform work on a sustained basis was made.  Rather, plaintiff's "improvement" was set to the standard of being sufficiently stable to be released from a hospital, not any ability to work on a full-time basis at a particular skill level.  As pointed out by another court, it is unsurprising that a claimant's mental impairment improved during periods of sobriety, but that does not necessarily mean that a claimant is not disabled but for the substance abuse.  *Kinner v. Comm'r of Soc. Sec.*, 2010 WL 653703,*6 (N.D. N.Y. 2010).  Rather, "the question is not whether Plaintiff was more severely limited when she was engaged in substance abuse, but rather whether she continues to meet the definition of disability during sobriety."  *Id.*; *see also Trent v. Astrue*, 2011 WL 841538 (N.D. Ohio 2011) (The

impact of alcohol on a mental condition is beyond the scope of the ALJ's area of expertise and an ALJ may not assume that depressive symptoms would improve with ongoing treatment and stopping the consumption of alcohol.").[2]

Notably, plaintiff received ongoing care and treatment over the course of several years through various mental health programs, including Genesee County Community Mental Health and New Passages. In addition, plaintiff had a consultative mental examination performed in 2006.[3] Unfortunately, none of these treating mental health professionals offered any specific opinions regarding any limitations on plaintiff's ability to work during periods of sobriety or the extent of improvement of his symptoms during such periods. In the view of the

---

[2] Unlike the scenarios presented in *Trent* and *Kinner*, the ALJ in the present case was not confronted with clear opinions from treating and consulting physicians that the mental health conditions and limitations of the claimants would be present regardless of the substance abuse. Here, the problem is not that the ALJ made a decision in the face of contrary opinions from treating and consulting physicians, but rather, as discussed below, that the ALJ failed to develop the record to obtain such opinions.

[3] The consultative examiner, Dr. Bottinelli wrote: "It is strongly recommended that Mr. Leigh continue to be involved in outpatient psychiatric treatment designed to reduce psychiatric symptomotology, stabilize daily functioning, and address substance abuse issues. Ongoing use of psychotropic medication will be an essential part of this treatment. Such treatment will be a necessary adjunct to any successful long-term attempt at vocational rehabilitation." (Tr. 318). Dr. Bottinelli did not offer any definitive opinion about whether and to what extent plaintiff's ability to work was limited during periods of sobriety or whether and to what extent plaintiff's symptoms improved simply by virtue of sobriety.

undersigned, this is where the ALJ should have recontacted the treating physicians and other mental health professionals who treated and evaluated plaintiff because a "critical issue [was] undeveloped." *Geranen v. Astrue*, 2011 WL 1356686, *3 (D. S.D. 2011) (citation omitted). For this reason, a remand for further review and investigation is warranted. Given this conclusion, the ALJ should also examine whether the vocational testimony offered at the hearing was consistent with the DOT.

## IV.  RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Michael Hluchaniuk

Date:  June 21, 2011                 Michael Hluchaniuk
                                     United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on June 21, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Victor L. Galea, Susan K. DeClercq, AUSA, and the Commissioner of Social Security.

s/Darlene Chubb
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov